Christine J. Haw (SBN 289351)
Email: chaw@slpattorney.com
Matthew J. Pardo (SBN 315879)
Email: mpardo@slpattorney.com
Caitlin J. Scott (SBN 310619)
Email: cscott@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Tel: (310)929-4900
Fax: (310)943-3838

Attorneys for Plaintiffs
ERIC E. GOFNUNG and ERIC E. GOFNUNG CHIROPRACTIC CO.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC E. GOFNUNG, et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BMW OF NORTH AMERICA, LLC; et al.,<br><br>    Defendants. | CASE NO.: 2:21-cv-06328-MEMF-JC<br><br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br>Magistrate: Jacqueline Chooljian<br><br>**MOTION *IN LIMINE* #1**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT REFERRING OR RELATING TO DEFENDANT'S ARBITRATION PROGRAM**<br><br>Action Filed: August 5, 2021<br>Pretrial Conference: April 19, 2023<br>Trial:  May 8, 2023 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at the Pretrial Conference on April 19,

1

2023 at 9:00 a.m., in courtroom 8B of the above-entitled Court, located at 350 West First Street, 8th Floor, Los Angeles, CA 90012 before the Honorable Maame Ewusi-Mensah Frimpong, Plaintiffs ERIC E. GOFNUNG and ERIC E. GOFNUNG CHIROPRACTIC CO. will and hereby does move this Court for an order *in limine* prohibiting Defendant BMW OF NORTH AMERICA, LLC ("BMW" or "Defendant") or its counsel or witnesses from introducing any evidence of Defendant's arbitration program.

This motion is made following the conference of counsel pursuant to L.R. 7-3.

Plaintiffs hereby respectfully move the Court *in limine* for an Order providing the following:

    1.    Prohibiting Defendant and Defendant's experts, attorneys, and witnesses from introducing or attempting to introduce (either directly or indirectly) any testimony or evidence regarding Defendant's arbitration program;

    2.    Prohibiting Defendant and its attorneys from introducing, or attempting to introduce, any of the above evidence during the trial of the above-entitled action, unless and until it is first determined to be admissible in evidence in a hearing held outside the presence and hearing of the jury;

    3.    Directing the attorneys for Defendant to instruct Defendant and its witnesses to refrain from mentioning or referring to the above-described evidence in the presence or hearing of jurors or prospective jurors; and

    4.    Directing the attorneys for Defendant to immediately inform Defendant and its witnesses of the terms and effect of the order *in limine*.

This motion will be based upon this notice of motion, the attached memorandum of points and authorities, the supporting Declaration of Caitlin Scott, upon the pleadings and papers on file in this action, and upon any additional evidence that the Court may permit.

1
2  Dated: March 22, 2023                STRATEGIC LEGAL PRACTICES, APC
3
                                   By:  */s/ Caitlin J. Scott*
4                                       CAITLIN SCOTT
                                        Attorneys for Plaintiffs
5                                       ERIC E. GOFNUNG and
                                        ERIC E. GOFNUNG CHIROPRACTIC
6                                       CO.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Plaintiffs bring this action in order to recover damages sustained as a result of Defendant's violation of various provisions of the Song-Beverly Consumer Warranty Act (the "Act"). Plaintiffs' claim for civil penalty is based upon California Civil Code section **1794(c)**, which provides for a civil penalty of up to two times the amount of actual damages, and the premise that Defendant BMW *willfully* failed to provide restitution for Plaintiff's vehicle after requested. Civil penalty under Song-Beverly may be recovered if "the buyer establishes that the [manufacturer's] failure to comply was willful...." Cal. Civ. Code section 1794(c). A manufacturer's noncompliance is "willful" when it knows "of its obligations but intentionally decline[s] to fulfill them." *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1250 (1995). Civil Code section 1794(e) imposes an automatic penalty when a manufacturer or distributor violates its obligation to repurchase or replace a vehicle under section 1793.2(d)(2). There is no requirement that the violation be willful. (*Suman v. Superior Court*, 39 Cal.App.4th 1309, 1316 (1995); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1250 (1995)).

Plaintiffs do not seek civil penalty damages under Civil Code section 1794(e) but rather under 1794(c). Since Plaintiffs must prove "willfulness," whether or not BMW had an arbitration program is wholly irrelevant to Plaintiffs' case and at trial. Any mention of it would confuse the jury and potentially prejudice Plaintiffs.

Moreover, BMW will be unable to prove that their arbitration program qualifies. The Act includes a provision allowing Defendant to establish a "[Q]ualified third-party [D]ispute [R]esolution [P]rocess" ("QDRP"). In order to qualify, BMW's arbitration program must meet nine separate requirements set forth in Civil Code section 1793.22(d)(1) through (9) and the requirements of 16 C.F.R. §§ 703.1 to 703.8. *See* Cal. Civ. Code § 1793.22(d). If BMW proves that it

maintains a QDRP, Plaintiffs cannot rely upon the presumption given in Civil Code section 1793.22(c) and Plaintiffs cannot recover the civil penalty contained in Civil Code section 1794(e)(1). *See* Cal. Civil Code § 1794(e)(2). BMW bears the burden of proving that their arbitration program meets the requirements of California and federal law. The regulations governing qualification of arbitration programs are exceedingly complicated and the evidence on this point will consume a substantial amount of time at trial. Also, insofar as BMW will be unable to prove that their arbitration program qualifies because of failure to identify witnesses necessary to support any claim that Plaintiffs failed to participate in alternative dispute resolution, such evidence should be excluded under Rule 37(c). Thus, the Court should grant this motion and exclude any reference to BMW's arbitration program in this action. However, should the Court consider allowing BMW to introduce any evidence that they maintain a QDRP at trial, the Court should hold an evidentiary hearing, outside of the presence of the jury, to determine whether BMW can make a *prima facie* showing that their program qualifies.

## II. ARGUMENT

### A. CALIFORNIA CIVIL CODE SECTION 1794(c)

Plaintiffs' claim for civil penalty is based upon California Civil Code section **1794(c)**, which provides for a civil penalty of up to two times the amount of actual damages, and the premise that BMW *willfully* failed to provide restitution for Plaintiffs' vehicle after requested. Civil Code section 1794(c) states "**If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages**." The court in *Kwan v. Mercedes-Benz of North America, Inc.*, 23 Cal.App.4th 174 (1994), noted that civil penalties are imposed as punishment or as deterrence. "[C]ourts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or

her actions. (Citations omitted.)" *Kwan*, *supra*, 23 Cal.App.4th 174. The court further defined the term "willful" as follows: "[A] violation [of the Act] is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present. This might be the case, for example if the manufacturer reasonably believed the product did conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund." (*Id*. at 185.) Willfulness requires an action in spite of knowledge. It is an accepted notion that willfulness requires that "the person knows what he is doing, intends to do what he is doing, and is a free agent." (*Ibrahim v. Ford Motor Co.*, 214 Cal.App.3d 878, 895 (1989)).

"A civil penalty may be awarded if the jury determines that the manufacturer knew of its obligations but intentionally declined to fulfill them. There is no requirement of blame, malice or moral delinquency. However, a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present." (*Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1249-1250 (1995)). The Court may determine that BMW acted willfully even if it was never able to duplicate the problems and believed that the vehicle was repaired. *Id*. at 1254.

The Act does not "require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle." (*Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 302-303 (1995)). The "Act creates an affirmative duty upon the manufacturer…to provide restitution or replacement when a … nonconformity is not repaired after a reasonable number of attempts." (*Krotin*, *supra*, at 301-302; *Lukather v. General Motors LLC*, 181 Cal.App.4th

1041, 1049 (2010)). Three seminal decisions on civil penalties each discuss the following factors a jury should consider in deciding whether to impose a penalty: (1) a nonconformity with a vehicle that substantially impaired its use, value or safety; (2) presentation of the vehicle to the manufacturer or authorized representative for repair; and (3) failure to repair the nonconformity after a reasonable number of attempts. (*Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094, 1095 (2001); *Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 135-136 (1995); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1254 (1995)). "If the jury chooses to impose a penalty, the amount may be up to two times the amount of damages . . . . There is no definite or required method of determining a penalty nor is the opinion of a witness required as to the amount of a penalty." (*Suman v. Superior Court*, 39 Cal.App.4th 1309, 1323 (1995)). Hence, the focus at trial will be whether BMW had "good faith and reasonable belief" in its denial of Plaintiffs' request, and not whether BMW was reasonable in providing alternate avenues of resolution, such as an arbitration program.

### B. CALIFORNIA CIVIL CODE SECTION 1794(e)

Civil Code section 1794(e)(1) states: "Except as otherwise provided in this subdivision, if the buyer establishes a violation [of 1793.2(d)(2)] the buyer shall recover damages and a reasonable attorney's fees and costs and may recover a civil penalty of up to two times the amount of damages."

Civil Code section 1794(e)(2) states: "If the manufacturer maintains a qualified third-party dispute resolution process which substantially complies with section 1793.22, the manufacturer shall not be liable for any civil penalty pursuant to this section." Civil Code section 1794(e)(5) states: "If the buyer recovers a civil penalty under subdivision (c), the buyer may not also recover a civil penalty under this subdivision for the same violation." Subdivision (e) imposes an *automatic* penalty when a manufacturer or distributor violates its obligation to repurchase

or replace a vehicle under section 1793.2(d)(2). There is no requirement that the violation be <u>willful</u>. (*Suman v. Superior Court*, 39 Cal.App.4th 1309, 1316 (1995); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1250 (1995)). The purpose of the law was to create a distinction between the aforementioned 1794(c) and also create an incentive for manufacturers to create informal arbitration programs aimed at addressing issues similar to that in the instant case, out of court. Interpreting "willful" to require only presentation of the vehicle for a warranty repair "would render 'willful' virtually all cases of refusal to replace or refund" and errantly renderers any distinction between willful and non-willful refusal violations meaningless. (*Kwan v. Mercedes-Benz of North America*, 23 Cal. App. 4th 174, 185 (1994)).

As discussed above, <u>Plaintiffs do not seek civil penalty damages under Civil Code section 1794(e) but rather under 1794(c)</u>. Since Plaintiffs must prove "willfulness", whether or not BMW had an arbitration program is wholly irrelevant to Plaintiffs' case and at trial. Any mention of it would confuse the jury and potentially prejudice Plaintiffs.

### C. BMW BEARS THE BURDEN OF PROVING THAT ITS ARBITRATION PROGRAM QUALIFIES

A QDRP applies to the Act's claims for two reasons. First, if BMW proves that they maintain a QDRP, Plaintiffs cannot rely upon the presumption contained in Civil Code section 1793.22(c) without using the QDRP. Cal. Civ. Code § 1793.22(c). Second, "(1) Except as otherwise provided in this subdivision, if the buyer establishes a violation of paragraph (2) of subdivision (d) of Section 1793.2, the buyer . . . may recover a civil penalty of up to two times the amount of damages. [¶] (2) [However,] [i]f the manufacturer maintains a qualified third-party dispute resolution process which substantially complies with Section 1793.22, the manufacturer shall not be liable for any civil penalty pursuant to this subdivision." Cal. Civ. Code § 1794(e)(1), (2). Subdivision (e)(2) of section 1794 is not an

8
PLAINTIFFS' MOTION IN LIMINE NO. 1 RE: DEFENDANT'S ARBITRATION PROGRAM

element of the claim for a civil penalty under subdivision (e)(1), but is rather an exception to the penalty.

### 1. Requirements for Qualification

In order to be a QDRP under the Act, BMW must prove that their arbitration program meets the nine separate requirements given in Civil Code section 1793.22(d):

> A qualified third-party dispute resolution process shall be one that does all of the following:
> (1) Complies with the minimum requirements of the Federal Trade Commission for informal dispute settlement procedures as set forth in Part 703 of Title 16 of the Code of Federal Regulations, as those regulations read on January 1, 1987.
> (2) Renders decisions which are binding on the manufacturer if the buyer elects to accept the decision.
> (3) Prescribes a reasonable time, not to exceed 30 days after the decision is accepted by the buyer, within which the manufacturer or its agent must fulfill the terms of its decisions.
> (4) Provides arbitrators who are assigned to decide disputes with copies of, and instruction in, the provisions of the Federal Trade Commission's regulations in Part 703 of Title 16 of the Code of Federal Regulations as those regulations read on January 1, 1987, Division 2 (commencing with Section 2101) of the Commercial Code, and this chapter.
> (5) Requires the manufacturer, when the process orders, under the terms of this chapter, either that the nonconforming motor vehicle be replaced if the buyer consents to this remedy or that restitution be made to the buyer, to replace the motor vehicle or make restitution in accordance with paragraph (2) of subdivision (d) of Section 1793.2.
> (6) Provides, at the request of the arbitrator or a majority of the arbitration panel, for an inspection and written report on the condition of a nonconforming motor vehicle, at no cost to the buyer, by an automobile expert who is independent of the manufacturer.
> (7) Takes into account, in rendering decisions, all legal and equitable factors, including, but not limited to, the written warranty, the rights and remedies conferred in regulations of the Federal Trade Commission contained in Part 703 of Title 16 of the Code of Federal Regulations as those regulations read on January 1, 1987, Division 2 (commencing with Section 2101) of the Commercial Code, this

chapter, and any other equitable considerations appropriate in the circumstances. . .
(8) Requires that no arbitrator deciding a dispute may be a party to the dispute and that no other person, including an employee, agent, or dealer for the manufacturer, may be allowed to participate substantively in the merits of any dispute with the arbitrator unless the buyer is allowed to participate also. Nothing in this subdivision prohibits any member of an arbitration board from deciding a dispute.
(9) Obtains and maintains certification by the Department of Consumer Affairs pursuant to Chapter 9 (commencing with Section 472) of Division 1 of the Business and Professions Code.

Cal. Civ. Code, § 1793.22(d).

Because subdivision (d)(1) of section 1793.22 incorporates the requirements of the 16 C.F.R. Part 703, BMW must also prove that its program meets the requirements of *all of the requirements under* 16 C.F.R. § 703.1, 703.2, 703.3, 703.4, 703.5, 703.6, 703.7, and 703.8. Proof of each of these elements at trial will be extremely time-consuming and if BMW is unable to prove that their program meets even a single requirement, it is a waste of time. If BMW intends to pursue this defense, the Court must schedule a hearing under Rule 104 of the F.R.E., outside the presence of the jury, in order to find whether BMW can present a prima facie case that its program meets each requirement.

### 2. Award of Remedies and Allowed Deductions

Under Part 703, BMW's arbitration program must be willing to award "any remedies appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and any other remedies available under the written warranty. . ." 16 C.F.R. § 703.5(d)(1).

If BMW is permitted to introduce evidence of their arbitration program's written operating procedures, Plaintiffs believe that these written procedures will show that the mechanism will not award attorney's fees to the prevailing consumer and will not award incidental and/or consequential damages to the prevailing consumer. *See Muller v. Winnebago Industries, Inc.*, 318 F.Supp.2d 844, 848-49

(D. Ariz. 2004) (concluding that the BBB Auto Line does not qualify because it fails to award consequential damages). BMW's evidence will show that BMW's mechanism will only consider claims that are brought under BMW's written warranty, and will not consider any others. As a result, BMW's arbitration program is not qualified. In addition, under the Act, if a consumer prevails and recovers restitution, the manufacturer is allowed a deduction only for the use of the vehicle up to the first repair attempt. Cal. Civ. Code § 1793.2(d)(2)(C). No other deductions are permitted. *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1243-1244 (2004).

If BMW is allowed to present evidence concerning their arbitration program, Plaintiffs believe that the evidence will show that BMW's program improperly allows deductions for items not permitted by California law, such as for accident damage to the subject vehicle after Plaintiffs revoked acceptance. Such deductions are improper under the authority stated above and because BMW is responsible for post-revocation damage. Cal. Comm. Code § 2510(2) ("[w]here the buyer rightfully revokes acceptance he may to the extent of any deficiency in his effective insurance coverage treat the risk of loss as having rested on the seller from the beginning.").

### 3. Further Non-Compliance with 16 C.F.R. Part 703

Under Part 703, "[c]opies of the written operating procedures shall be made available to any person upon request." 16 C.F.R. § 703.5(a). Plaintiffs believe that the evidence at trial will show that when members of the public call BMW's arbitration program, Better Business Bureau Auto Line ("BBB Auto Line"), and request copies of the written operating procedures, BBB Auto Line refuses to provide them. Part 703 also requires that "[t]he Mechanism shall make available to any person upon request, information relating to the qualifications of Mechanism staff and members." 16 C.F.R. § 703.8(f). Plaintiffs believe that the evidence will show that BMW's arbitration program fails to do so. Part 703 further

requires that "[t]he statistical summaries specified in § 703.6(e) of this part shall be available to any person for inspection and copying." 16 C.F.R. § 703.8(a). The evidence at trial will show that BMW's arbitration program refuses to do so.

### D. THE COURT SHOULD PRECLUDE BMW FROM INTRODUCING EVIDENCE TO SUPPORT ANY CLAIM THAT THEY MAINTAIN A QDRP THAT WAS NOT PREVIOUSLY DISCLOSED

In order to be a QDRP under California law, BMW must prove that its arbitration program "[o]btains and maintains certification by the Department of Consumer Affairs pursuant to Chapter 9 (commencing with Section 472) of Division 1 of the Business and Professions Code." Cal. Civ. Code § 1793.22(d)(9). BMW's Rule 26 Disclosures identified no witnesses having knowledge showing that their program is certified. Therefore, any testimony tending to show that BMW's arbitration program is certified by the California Department of Consumer Affairs should be excluded. *See* Fed. R. Civ. P. 37(c). Although BMW did identify some witnesses in its Rule 26 Disclosures, insofar as none were identified as persons who would testify on the subject of BMW's arbitration program as required by Rule 26(a)(1)(A)(i). Fed. R. Civ. P. 26(a)(1)(A)(i)(requiring disclosure of witnesses "along with the subjects of that information . . . ."), any belatedly disclosed witnesses to testify on the subject of BMW's arbitration program must be excluded under Rule 37(c), and all disclosed witnesses should be precluded from testifying on this subject.

### E. ANY EVIDENCE OF AN ARBITRATION PROCESS WOULD BE MISLEADING, CONFUSING, AND PREJUDICIAL

Plaintiffs anticipate BMW will seek to introduce evidence its participation in the BBB's Auto Line to inform the jury that Plaintiffs did not resort to such process before commencing the instant lawsuit. Such evidence of the existence of BMW's arbitration program is irrelevant and more prejudicial than probative by attempting to suggest that Plaintiffs are litigious.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

12

PLAINTIFFS' MOTION IN LIMINE NO. 1 RE: DEFENDANT'S ARBITRATION PROGRAM

"'Relevant evidence' is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Fed. R. Evid. 401.

BMW may try to introduce evidence that Plaintiffs could have, instead of filing suit, availed themselves of arbitration, either through a manufacturer arbitration program or some other form of arbitration program. The Act, at Civil Code section 1793.2(d)(2), provides guidance on this question:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either **promptly** replace the new motor vehicle . . . or **promptly** make restitution to the buyer. . . However, the buyer shall be free to elect restitution in lieu of replacement (emphasis added).

Under the Act, the "manufacturer has an affirmative duty to replace a vehicle or to make restitution to the buyer. *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1050 (2010). The "Act does not *require* consumers to take any affirmative steps to secure relief . . . other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle." *Id.* Thus, the Act does not require arbitration nor does the Act make the availability of arbitration a defense to BMW's obligations to repurchase a defective vehicle.

Under F.R.E. 403, if the Court finds that the probative value of evidence is substantially outweighed by its prejudicial effect, or if the evidence would confuse or mislead the jury, or lastly if presentation of the evidence would cause an undue delay, it may be excluded even if it is relevant to the case. The evidence sought to be excluded is highly prejudicial. A jury may view the failure to arbitrate as a reason to deny an otherwise valid claim. To negate this prejudice, Plaintiffs would be forced to conduct a "trial within a trial" to establish their contention that any arbitration process offered by BMW would be unfairly biased against consumers. Such a situation would be confusing, prejudicial, and unduly time consuming.

This evidence may confuse or mislead the jury as to the elements Plaintiffs are required to prove. The jury could mistakenly take the evidence as proof that BMW has not violated the Act, which is clearly erroneous. Finally, even where an arbitration process by a qualified dispute resolution process under the Act is available, the results are non-binding on the consumer. *See* Civ. Code § 1793.22(d)(2). Thus, evidence of the existence of any arbitration procedure is irrelevant and more prejudicial than probative.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion *in limine* Number 1 should be granted.

Dated: March 22, 2023          STRATEGIC LEGAL PRACTICES, APC

By:     __/s/Caitlin J. Scott_____
CAITLIN SCOTT
Attorneys for Plaintiffs
ERIC E. GOFNUNG and
ERIC E. GOFNUNG CHIROPRACTIC CO.